```
 1  THOMAS P. O'BRIEN
    United States Attorney
 2  CHRISTINE C. EWELL
    Assistant United States Attorney
 3  Chief, Criminal Division
    DANIEL J. O'BRIEN (California Bar #141720)
 4  Assistant United States Attorney
    Major Frauds Section
 5       1100 United States Courthouse
         312 North Spring Street
 6       Los Angeles, California 90012
         Email: daniel.obrien@usdoj.gov
 7       Telephone: (213) 894-2468
         Facsimile: (213) 894-6269
 8
    Attorneys for Plaintiff
 9  United States of America
```

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CR No. 08-1122-JFW |
|---|---|---|
| Plaintiff, | ) | GOVERNMENT'S POSITION RE SENTENCING OF TUVIA MILSZTEIN; DECLARATION OF DANIEL J. O'BRIEN |
| v. | ) | |
| TUVIA MILSZTEIN, aka Adam Milstein, | ) | |
| Defendant. | ) | Date: April 15, 2009<br>Time: 10:00 a.m.<br>Courtroom: 16 |

Plaintiff United States of America, through its attorney of record, the United States Attorney for the Central District of California, hereby submits its position regarding the sentencing of defendant Tuvia Milsztein ("Milsztein").

//
//
//
//
//
//

This pleading is based upon the pre-sentence report, the plea agreement, the declaration of Daniel J. O'Brien, the government's publically-filed sentencing memoranda filed in connection with the related cases <u>United States v. Uri Mandelbaum</u>, CR 08-805-JFW and <u>United States v. David Hager</u>, CR 08-996-JFW, and the files and records of this case.

Dated: April 3, 2009        Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


<u>/s/ Daniel J. O'Brien</u>
DANIEL J. O'BRIEN
Assistant United States Attorney
Major Frauds Section

Attorneys for Plaintiff
United States of America

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The government recommends a three-level downward departure from the Sentencing Guidelines for defendant's extraordinary acceptance of responsibility. Moreover, to address defendant's voluntary payment of back taxes with respect to contributions he made to non-Spinka charities, and his lesser culpability compared to Spinka contributors David Hager and Uri Mandelbaum, the government further recommends that the Court impose a sentence of four-months confinement in a community half-way house.[1]

### II. BACKGROUND AND TERMS OF THE PLEA AGREEMENT

#### A. THE SPINKA INVESTIGATION

This tax evasion case arose from evidence compiled during the investigation of United States v. Weisz, et al., CR 06-775(C)-JFW, a tax fraud and money laundering scheme through which taxpayers would claim false charitable tax deductions based upon contributions that were reimbursed through an elaborate underground banking network and by international monetary transfers into foreign nominee bank accounts.

Early in 2008, as a result of evidence obtained through a Title III wire intercept and from search warrants executed at various locations, the government compiled a list of over 100 targets who it believed had contributed to Spinka organizations and had received kickbacks in return.

#### B. INVESTIGATION OF URI MANDELBAUM

In February 2008, approximately two months after the arrest

---

[1] The government understands that defendant Milsztein joins in the government's sentencing recommendation.

of the Spinka defendants, the government received an unsolicited call from counsel for Uri Mandelbaum, a Spinka contributor. Mandelbaum's counsel stated that his client had expressed deep remorse for his conduct and wished to take responsibility for the tax fraud he had committed through Spinka entities.

The parties eventually reached a plea agreement requiring Mandelbaum to plead guilty to two tax fraud counts, corresponding to the two years as to which the government had compiled substantial evidence, 2005 and 2006. For purposes of the Sentencing Guidelines, the parties agreed that the loss should be limited to the contributions Mandelbaum had made, plus those he bundled on behalf of other participants in the scheme, during those two years. In order to accept responsibility and provide full restitution, however, Mandelbaum also disclosed details of his own involvement in the Spinka scheme in the years preceding 2005. The parties agreed that a fair estimate of the applicable restitution would be an amount equal to all contributions Mandelbaum made to Spinka organizations within the past six years. Furthermore, in return for defendant's extraordinary acceptance of responsibility, the government agreed to recommend a downward departure of three levels from the Sentencing Guidelines.

Both parties were interested in the possibility that by entering into such an agreement, many similarly situated contributors would request similar pre-indictment dispositions and that many of the 100 plus cases could be resolved in an efficient manner. The Mandelbaum disposition did not have the

intended effect on other contributors, at least not in scope.

C. <u>INVESTIGATION OF DAVID HAGER</u>

In May 2008, the government issued investigatory subpoenas relating to approximately one third of the previously identified targets. Some of these subpoenas were issued to David Hager, a Spinka contributor, and his tax preparer. In June 2009, after the issuance of the subpoenas, the government received contact from Hager's counsel who indicated an interest in engaging in a pre-indictment disposition with the government along the lines of Mandelbaum. The government agreed.

D. <u>INVESTIGATION OF MILSZTEIN</u>

Evidence obtained regarding Hager included wiretap evidence in which Weisz and Zigelman discussed on multiple occasions Hager's contributions, kickbacks, and reimbursement rate, and a call between Hager and Zigelman in which Hager informed Zigelman that he would be sending in a check from one of his partners. Evidence obtained from a search warrant executed at the residence of Zigelman included handwritten accounting records showing contributions, kickbacks, and profit calculations concerning Hager's contributions and contributions he had bundled on behalf of his business partners for the years 2005 and 2006.

Using publicly-available resources, the government was able to "link up" some of the kickbacks associated with Hager in Zigelman's notes to other Spinka contributors, including defendant Milsztein.

In June or July 2008, the government received a telephone call from counsel for defendant Milsztein with respect to

Milsztein entering into a plea agreement with the government.  As in the case of the Mandelbaum and Hager agreements, the parties agreed to a plea of guilty to two tax fraud counts, and the loss figure was limited to those contributions Milsztein had made during those two years only, 2005 and 2006. Milsztein proffered information conceding his involvement in the Spinka scheme in previous years and agreed to make restitution.[2] In return, the government agreed to recommend a downward departure of three levels from the sentencing guidelines.

### III. THE GOVERNMENT RECOMMENDS A THREE-LEVEL SENTENCING GUIDELINE REDUCTION FOR EXTRAORDINARY ACCEPTANCE OF RESPONSIBILITY

The Pre-Sentence Report argues that the three-level downward departure for extraordinary acceptance agreed to by the parties in the plea agreement is not appropriate under the revised sentencing guidelines. The government stands by its plea agreement and recommends the downward departure. In the alternative, the government believes that the same objectives can be accomplished through a Booker-type variance.

The departure or variance is appropriate given Milsztein's voluntary disclosure of criminal conduct exceeding that which was known to the government; his voluntary production of documents that pertain to his participation in the scheme to evade the

---

[2] The assertion by Milsztein and others that it is a sin to recount another's misdeeds is not absolute.  There are different interpretations of this concept depending upon which Talmudic scholar is consulted.  For example, some rabbinical authorities state that this belief system does not apply to providing information to democratic, non-oppressive governments.  See http://www.come-and-hear.com/editor/moser-broyde/index.html.

4

payment of taxes; and his entry into this plea agreement at such an early stage of the government's investigation. The departure or variance results in a Sentencing Guideline range of four to ten months.

The government recommends that the Court impose a probationary sentence with the condition that defendant spend four months in a half-way house and pay the costs of this community confinement. Forbearance from imposing a prison sentence is appropriate (1) to acknowledge Milsztein's voluntary payment of back taxes, not required by the terms of the plea agreement, that address kickbacked contributions Milsztein issued to non-Spinka charitable organizations, and (2) to differentiate Milsztein's sentence from the six-month custodial sentences imposed against Hager and Mandelbaum, both of whom solicited and bundled contributions from other individuals. Milsztein is best characterized as a "bundlee" as he did not solicit others to join in the scheme and merely issued contributions on his own behalf.

IV. **DEFENDANT'S HISTORY AND CHARACTERISTICS**

The pre-sentence report details Milsztein's history of engaging in charitable endeavors. The government has no information that brings these facts into question. The government's only reservation is that when the defense speaks of Milsztein's charitable giving, there is an obvious concern that much of his philanthropy appears to have been merely a device to defraud the government.

V. **NATURE AND CIRCUMSTANCE OF THE OFFENSE**

The criminal acts alleged in this case are quite serious.

This is not an isolated violation of the tax laws. Spinka operates a criminal tax fraud, money laundering, and underground banking organization that involved fraud in the hundreds of millions of dollars. Defendant Milsztein's participation in this crime was significant and sustained. He engaged in the scheme for multiple years and received kickbacks, in 2005 and 2006 alone, totaling $170,000 dollars.

## VI. NEED FOR SENTENCE TO SATISFY PURPOSES OF SENTENCING

### A. JUST PUNISHMENT

The probation officer has recommended a sentence of three-years probations with six-months home confinement, 150 hours of community service, and a $30,000 fine.

The government believes that a sentence of four-months in a community halfway house would more adequately punish the offense and generally deter the public. Milsztein is an extremely wealthy man. He lives in a spacious 5000-square-foot home in the Encino Hills equipped with a swimming pool and other luxuries. Permitting Milsztein to continue his routine of working outside of the home and his ability to return home to such comforts is not adequately punitive. The fine cannot be considered a significant sanction, given his net worth in the amount of $147,000,000. Moreover, Milsztein already spends a large amount of his time engaging in community service. Such efforts are, of course, admirable, but they cannot be accurately deemed to be punishment when they are routinely undertaken by choice.

### B. DETERRENCE

Given the scope of this scheme, effectuating general

deterrence should be of paramount importance. There is substantial evidence that this scheme is far reaching and widespread. According to the informant, the tax fraud and underground banking network is a tradition engaged in by a number of Hasidic groups. (See Exhibit One to Government's Sentencing Memorandum filed in connection with related case United States v. Uri Mandelbaum, CR 08-805-JFW.) Public news reports similarly indicate that this tax fraud scheme, money laundering, and hawala banking network is widely engaged in by Hasidic rabbinical organizations other than Spinka. See, e.g., Nurit Roth, "Chabad Leaders Arrested For Alleged Theft, Money Laundering," Haaretz.com (Nov. 15, 2007) (available at http://www.haaretz.com/hasen/spages/924248.html Rampant fraud of this type needs to be addressed with significant punishment.

This case may represent a rare opportunity to deter this type of rampant fraud. This is true largely due to the secret nature of the organization. Many of its members, including Milsztein, subscribe to the belief that it is a sin to inform on a fellow Jew, even when engaged in the commission of a crime in a free and democratic country like the United States. Under such circumstances, the relatively few who are caught and convicted need to provide an example to the community that such behavior carries with it not only enormous profits, but serious costs.

C.  PROPORTIONALITY OF SENTENCING

On March 2, 2009, the Court sentenced Hager to a term of imprisonment of six months, a fine of $30,000, and 1500 hours of community service.

On March 23, 2009, the Court sentenced Mandelbaum to a term of imprisonment of six months, a fine of $50,000, and 1200 hours of community service.

After factoring in a three-level sentencing reduction as contemplated by the plea agreement, Milsztein's sentencing range would be four to ten months imprisonment based upon an offense level of eight.

Milszstein should receive a sentence less than that received by Mandelbaum and Hager. The loss amounts involved in Milzstein's case is less, and Milzstein did not solicit or bundle contributions from other contributors in furtherance of the scheme. In addition, unlike Mandelbaum, Milsztein has paid to the IRS back taxes relating to contributions he made to non-Spinka charities which was not required by the terms of the plea agreement.

## VI. CONCLUSION

A tax fraud of this scope merits significant punishment. Mandelbaum's willingness to accept responsibility for his conduct merits a significant reduction. A balance must be struck between these two competing concerns.

The government submits that the following guideline calculations are applicable:

| | |
|---|---|
| Base offense level (53,550 tax loss | = 14 |
| Acceptance of responsibility | = -3 |
| Extraordinary Acceptance | = -3 |
| Subtotal | = 8 |

The government recommends that the Court sentence defendant

Mandelbaum to three years probation, with conditions that he spend four-months in a community half way house, pay the costs of this community confinement, perform 600 hours of community service, and pay a fine of $30,000.

DECLARATION OF DANIEL J. O'BRIEN

I, Daniel J. O'Brien, do hereby declare:

1. I am an Assistant United States Attorney assigned to prosecute the matter of <u>United States v. Tuvia Milsztein</u>, CR No. 08-1122-JFW. This declaration is being made in support of the government's sentencing memorandum in that case.

2. On March 23, 2009, I received materials from defense counsel for defendant Milsztein indicating that he had paid not only the restitution amounts required by the terms of his plea agreement, but also $857,619 in back taxes relating to contributions to non-Spinka charities as to which he had received kickbacks.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 3rd day of April 2009 in Los Angeles, California.

DANIEL J. O'BRIEN